UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CASEY DOWNEY,

                        Plaintiff,

-against-                                            1:24-CV-168 (LEK/CFH)

NEW YORK STATE OFFICE FOR PEOPLE
WITH DEVELOPMENTAL DISABILITIES,

                        Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Casey Downey commenced this action by filing a complaint asserting claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq*. Dkt. No. 1 ("Complaint"). On March 15, 2024, Defendant New York State Office for People with Developmental Disabilities filed a motion to dismiss the Complaint. Dkt. No. 6-1 ("Motion"). Plaintiff responded with a cross-motion to amend the Complaint, Dkt. No. 11-1 ("Cross-Motion"), and Defendant filed a reply, Dkt. No. 13 ("Reply").

      For the reasons that follow, Defendant's Motion is granted, and Plaintiff's Cross-Motion is denied.

**II.    BACKGROUND**

    **A.  The Complaint**

      Plaintiff alleges the following in the Complaint. Defendant hired Plaintiff as a "Standards Compliance Analyst" and later promoted her to a "Project Manager" position. Compl. ¶ 12. Plaintiff is "diagnosed with and suffers from Reactive Hypoglycemia and pre-diabetes." Id. ¶ 13.

As a result of this diagnosis, Plaintiff is at an "increased risk [of] severe illness if she contracts Covid-19 and/or similar diseases." Id. The diagnosis also requires Plaintiff "to attend [to] occasional unpredictable medical episodes." Id.

In March 2020, due to the COVID-19 pandemic, Defendant reassigned Plaintiff to another unit and informed her that she could perform her work remotely. See id. ¶ 15. A year later, Plaintiff received an "Employee of the Year" award from Defendant. Id. ¶ 16. On January 3, 2022, almost two years after the onset of the COVID-19 pandemic, Plaintiff "applied for a reasonable accommodation to telecommute full-time due to her obesity and pre-diabetes diagnosis." Id. ¶ 17. Her application was initially denied due to incomplete medical information, but Plaintiff reapplied on January 13, 2022. See id. ¶¶ 18–19. Plaintiff followed up multiple times in the following weeks, and she received a response on February 22, 2022, approving her for full-time telework "pending a formal review." Id. ¶¶ 20–23.

Plaintiff was diagnosed as hypoglycemic in April 2022. See id. ¶ 24. In August 2022, she was prescribed a continuous glucose monitor "due to the frequency and severity of hypoglycemic events." Id. ¶ 25. Her supervisor ("Smith") requested that she resubmit her accommodation paperwork for a formal review, which she did. See id. ¶¶ 24–26. On September 21, 2022, Plaintiff had a phone call with ADA Coordinator Norman ("Norman"), in which Plaintiff provided information regarding her new medical condition. See id. ¶ 27. Plaintiff explained that her new medical condition requires a "continuous glucose monitor," was "not controlled and unpredictable," and "puts her at higher risk for poor outcomes should she contract Covid-19 and other similar diseases." Id. ¶ 27. In a follow-up conversation on September 30, 2022, Norman asked Plaintiff if she "would accept the accommodation of a workspace away from others, wearing a mask in office and an alternate work schedule." Id. ¶ 28. Plaintiff

2

responded that "she was not comfortable, and would need to consult her doctor before accepting that as an alternative accommodation." Id.

On October 3, 2022, Plaintiff's request for full-time telecommuting was denied. See id. ¶ 29. The denial reasoned that Plaintiff "did not qualify as having a disability but acknowledged that some people were still at high risk of Covid complications." Id. Plaintiff appealed the denial on October 14, 2022, which was denied on the same day. See id. ¶ 30. Plaintiff alleges that neither request allowed her the "opportunity to engage in its process." Id. Plaintiff then sent multiple emails to Norman and Smith, stating that her accommodation request was not properly reviewed and Defendant did not sufficiently engage in an interactive process. See id. at ¶¶ 31–32. Plaintiff also discussed her concerns about the denial with an individual named "Yancey." See id. ¶ 33. On October 19, 2022,[1] Yancey stated that "they are no longer providing COVID accommodations 'due to the low risk of infections'" and that Plaintiff would not be allowed to telework "because she 'did not feel good.'" Id.

On October 25, 2022, Plaintiff emailed Norman updated medical forms from Plaintiff's Endocrinologist recommending that Plaintiff be allowed to work remotely full-time for up to a year. See id. ¶ 34. In the email, Plaintiff also explained "the impact her condition has on job related functions such as leaving in person meetings, trainings, and work-related activities multiple times a day to monitor and correct her glucose levels." Id. ¶ 34. The next day, Plaintiff attended a video conference with Norman and an individual named "Janice." Id. ¶ 35. During the meeting, Norman stated that she never spoke to Smith about an alternative accommodation because Norman thought Plaintiff was not interested. See id. Plaintiff then "presented an email

---

[1] The Complaint alleges that this conversation occurred on October 19, 2023, but the Court assumes this is an error and that Plaintiff meant October 19, 2022. See id. ¶ 33.

3

thread between Smith and Norman that shows that Norman spoke to Smith and the alternative accommodations could not be implemented in a particular department." Id. Norman then stated that Plaintiff rejected the alternative accommodation, but Plaintiff "repudiated that statement, referring to a prior conversation, where [Plaintiff] stated she would need to consult her doctor before accepting any alternative accommodation." Id. Plaintiff explained how working in person "would prevent her from accessing information in the ways her colleagues do because she would need to leave work activities to attend medical events." Id. Working in person, according to Plaintiff, would force her "to cancel or leave meetings to handle her glucose levels," whereas "telecommuting allowed her to stay involved in meetings and training." Id. The parties then agreed that, "should any alternative accommodation be considered by Defendant; a subsequent meeting would be set up to discuss the alternatives." Id.

On November 16, 2022, Plaintiff received an email from Norman and Yancey which "falsely stated that the meeting discussed alternative accommodations [which] could overcome 'job-related limitations' imposed by the disability." Id. ¶ 36. Plaintiff responded by remining them that two separate doctors recommended that Plaintiff work remotely full-time, and Plaintiff requested another meeting to discuss alternative accommodations. See id. Two days later, Plaintiff received another email from Norman and Yancey (the "November 18, 2022 Email"), which "provided that [Plaintiff] would be able to leave meetings, have her phone during meetings, leave for treatment/recuperation, access to private area, and use of First Aide Support Team." Id. ¶ 37. Plaintiff responded by requesting another meeting to discuss alternative accommodations. See id.

On December 14, 2022, Plaintiff received another email providing alternative accommodations (the "December 14, 2022 Email"), which included "the ability to utilize the two

4

15-minute breaks and 30-minute lunch when needed to attend to medical needs" and the flexibility to "begin her workday earlier or stay later to make up any necessary time." Id. ¶ 38. According to Plaintiff, "the alternative accommodations being offered were not what had been indicated on the November 18, 2022[ E]mail" but merely "contained flexibility that most employees already had." Id. Additionally, although the November 18, 2022 Email references access to a private area, the December 14, 2022 Email did not indicate a designated privacy area. See id. Plaintiff also claims that the December 14, 2022 Email did not provide her any guidance on how to use the First Aide Support Team. See id. The alternative accommodation stated that it was "an agency priority for its employees to have an in-office presence" and noted that New York State was no longer under a COVID-19 state of emergency. Id. Plaintiff was asked to accept or deny the accommodations by December 21, 2022, which would be approved through June 30, 2023. Then, Plaintiff would need to reapply for the accommodation. See id. Plaintiff "followed up with an email stating she would not be able to accept or deny the alternative accommodation without further discussion." Id.

Plaintiff met again with Norman and Yancey on December 20, 2022. See id. ¶ 40. Yancey stated that Defendant "believes that the accommodation is reasonable and accessible." Id. Yancey noted that Plaintiff could file an appeal, but Plaintiff would have to return to work without any accommodation during the time the appeal is pending. See id. During the meeting, Yancey stated, "she believes that [Plaintiff] was more concerned with 'optics' in regard to her disability." Id. When Plaintiff "expressed concern over not having a designated space to attend to medical needs [and] therefore people not knowing where she may be and the possibility of passing out," Yancey said, "we can't control when our bodies do what our bodies does." Id.

5

Yancey lastly noted that the Family and Medical Leave Act is another "avenue to help those who have medical conditions if [Plaintiff] feel[s] like [she's] unable to work due to being sick." Id.

In January 2023, "Smith corresponded with HR regarding [Plaintiff]'s relocation to a new workspace in order to provide her with some accommodations." Id. ¶ 41. Norman contacted Plaintiff to determine if the relocation and accommodations would be acceptable to her. See id. ¶ 42. Plaintiff told Norman that Defendant was unable to provide accommodations or continue the interactive process due to her appeal. See id. ¶ 43. Additionally, Plaintiff "was not comfortable re-engaging in conversation" with Norman "based on the treatment previously received by Norman." Id. When Plaintiff finally reported to her in-office location, Defendant "did not provide [Plaintiff] with her necessary work equipment" including a computer monitor, docking station, keyboard, and mouse. Id. ¶ 44. As a result, Plaintiff purchased her own equipment. See id.

In the Complaint, Plaintiff asserts two claims: (1) a failure to accommodate claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, and (2) discrimination based on disability under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296. See id. ¶¶ 46–61. Plaintiff seeks a declaratory judgment, injunctive relief and monetary damages. See id. at 13–14.

### B. The Parties' Motions

In its Motion, Defendant argues Plaintiff's ADA claim is barred by the Eleventh Amendment. See Mot. at 4–6. Defendant then contends that the Court should decline to exercise its supplemental jurisdiction over Plaintiff's NYSHRL claim. See id. at 6. Defendant further argues that Plaintiff fails to allege that (1) she suffered an adverse employment action under the

6

NYSHRL (and ADA) or (2) Defendant failed to provide a reasonable accommodation. See id. at 7–18.

In its Cross-Motion, Plaintiff concedes that sovereign immunity bars her ADA claim. See Cross-Mot. at 5. Plaintiff requests leave to amend the Complaint to replace the ADA claim with a failure to accommodate claim under the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a). See id. at 5–7. Plaintiff attaches to the Cross-Motion a copy of a proposed amended complaint, see Dkt. No. 11-2 ("Proposed Amended Complaint" or "PAC"), in which Plaintiff supplants the ADA claim for an RA claim but leaves the factual allegations the same in all relevant respects. Compare PAC ¶¶ 12–47 with Compl. ¶¶ 12–45. In the Cross-Motion, Plaintiff argues that the RA claim is not barred by the Eleventh Amendment, that she suffered an adverse employment action, and that Defendant failed to provide reasonable accommodations. See Cross-Mot. at 5–12.

In its Reply, Defendant argues that the Court should deny Plaintiff leave to file an amended complaint because the amendment is futile. See Reply at 2–6. Defendant contends that the new RA claim, as with the NYSHRL claim, fails to allege that Defendant did not provide a reasonable accommodation. See id. at 3–4. Defendant also argues that Plaintiff fails to allege a "qualifying disability" under the RA, and that Plaintiff does not allege discriminatory intent and an adverse employment action. See id. at 4–10. Lastly, Defendant contends it is entitled to sovereign immunity for the NYSHRL claim. See id. at 11.

## III. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

**B.  Amended Complaint**

"Leave to amend should be 'freely give[n] . . . when justice so requires' [under Federal Rule of Civil Procedure 15(a)(2)], but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016) (quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008)). "A proposed amendment to a complaint is futile when it could not

withstand a motion to dismiss." Balintulo v. Ford Motor Co., 796 F.3d 160, 164–65 (2d Cir. 2015) (quoting Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002)).

When determining if an amendment is futile due to a potential motion to dismiss, the proposed pleading must "be judged by the same standards as those governing the adequacy of a filed pleading" if it were attacked by a motion to dismiss. Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).

## IV.   DISCUSSION

### A.  Motion to Dismiss the Complaint

The parties agree that the ADA claim is barred by sovereign immunity, see Mot. at 4–6, Cross-Mot. at 5. The Court agrees. See Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374 (2001) (holding Title I of the ADA does not abrogate Eleventh Amendment sovereign immunity). Without the ADA claim, the only remaining claim is the NYSHRL claim, over which the Court declines to exercise supplemental jurisdiction. See McCrain v. Metro. Transp. Auth., No. 17-CV-2520, 2020 WL 1285634, at *20 (S.D.N.Y. Mar. 18, 2020) (declining to exercise supplemental jurisdiction over NYSHRL claims after granting the defendant's motion for summary judgment on ADA claims). Accordingly, Defendant's Motion is granted.

### B.  Cross-Motion to Amend the Complaint

Plaintiff's Proposed Amended Complaint alleges a failure to accommodate claim under the RA and retains the disability discrimination claim under the NYSHRL. See generally PAC.[2]

---

[2] Plaintiff argues that her new RA claim, which supplants the ADA claim in its entirely, is not barred by sovereign immunity. See Resp. at 5. Unlike the ADA, "New York's acceptance of federal funds under [Section 504 of the Rehabilitation Act] . . . constitute[s] a knowing waiver of New York's sovereign immunity." Marino v. City Univ. of N.Y., 18 F. Supp. 3d 320, 331 (E.D.N.Y. 2014).

9

The Court finds that Plaintiff's Proposed Amended Complaint fails to allege (1) Defendant's requisite mental state and (2) Defendant's failure to provide a reasonable accommodation. Since Plaintiff fails to state a claim under both causes of action, leave to amend the Complaint would be futile. Plaintiff's Cross-Motion is denied.

*i.     Deliberate Indifference under the Rehabilitation Act*

Defendant argues Plaintiff fails to state a claim for monetary damages under the RA because the Proposed Amended Complaint fails to allege deliberate indifference. See Reply at 6. "[C]ompensatory damages . . . are available only if a defendant was deliberately indifferent to the potential violation of the RA." Biondo v. Kaleida Health, 935 F.3d 68, 74 (2d Cir. 2019); Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 115 (2d Cir. 2001) ("[D]eliberate indifference remains the necessary showing for [Section] 504 claims.").

The Proposed Amended Complaint, like the Complaint, lacks any factual allegations of deliberate indifference. Plaintiff states that Defendant was deliberately indifferent by failing to engage in the interactive process. See PAC ¶ 31. To the contrary, the parties engaged in several interactions and discussions regarding which accommodations could be suitable. See PAC ¶¶ 24, 29–31, 35, 37–39. Therefore, the Court cannot infer deliberate indifference from this interactive process, even if the parties did not meet as much as Plaintiff would have preferred. Furthermore, the Proposed Amended Complaint directly alleges the absence deliberate indifference: "Defendant believed that the accommodation was reasonable and accessible." Id. ¶ 42.

The only other mention of Defendant's mental state in the Proposed Amended Complaint is the conclusory statement at the end of Plaintiff's factual allegations: "[e]vidently, Defendant denied [Plaintiff]'s request for reasonable accommodation based on a discriminatory animus based upon her disability." Id. ¶ 47. But the Proposed Amended Complaint does not allege any

10

facts supporting deliberate indifference against Plaintiff. This "the-defendant-unlawfully-harmed-me accusation," without any factual support, is not enough to demonstrate a mental state culpable of deliberate indifference. Iqbal, 556 U.S. at 678; see A.D. v. New York State Dep't of Corr. & Cmty. Supervision, No. 21-CV-5970, 2022 WL 523456, at *4 (S.D.N.Y. Feb. 22, 2022) ("[C]onclusory allegations are not sufficient to plead animus or deliberate indifference [for ADA and RA claims]."). As the Proposed Amended Complaint fails to allege deliberate indifference, leave to amend the Complaint is futile with regard to Plaintiff's RA claims seeking monetary damages.

    ii. *Discriminatory Intent under the NYSHRL*

Under the NYSHRL, "[a] plaintiff must plead facts plausibly supporting that a 'minimal inference of discriminatory motivation' existed in connection with the adverse employment action." Crosby v. Stew Leonard's Yonkers LLC, 695 F. Supp. 3d 551, 567 (S.D.N.Y. 2023) (quoting Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)).

As discussed above, the Court cannot infer discriminatory intent when Defendant engaged in several interactions and discussions regarding which accommodations could be suitable. See *supra* Part IV.B.i. As with deliberate indifference, Plaintiff's sparce references to Defendant's mental state in the Proposed Amended Complaint are not sufficient to find that Defendant acted with discriminatory intent.

    iii. *Reasonable Accommodation under the Rehabilitation Act and NYSHRL*

Defendant argues that, even if Plaintiff sufficiently alleges deliberate indifference or discriminatory intent, the Proposed Amended Complaint still fails to state a claim for failure to accommodate under the RA and NYSHRL. See Reply at 2–11.

11

Claims for disability discrimination under the RA, ADA, and NYSHRL are analyzed under the McDonnell Douglas[3] burden-shifting framework. See 29 U.S.C.A. § 794 ("The standards used to determine whether this section [of the RA] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990."); Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under [the NYSHRL] is governed by the same legal standards as govern federal ADA claims. Thus, to the extent that [the plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim.") (citation omitted).

Under the McDonell Douglass framework, Plaintiff "bears the initial burden to establish a prime facie case." Graves, 457 F.3d 181 at 187. "To establish a prima facie case of discrimination based on an employer's failure to accommodate a disability, under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that '(1) [the plaintiff] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" Natofsky v. City of New York, 921 F.3d 337, 352 (2d Cir. 2019) (quoting McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009); see also Vinokur v. Sovereign Bank, 701 F. Supp. 2d 276, 293 (E.D.N.Y. 2010) (citing same standard for NYSHRL claims). "If the plaintiff succeeds in establishing a prima facie case of disability discrimination, the burden shifts to the employer to demonstrate that the employee's proposed accommodation

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

would have resulted in undue hardship." Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 (2d Cir. 2000).

"A reasonable accommodation is one that 'enable[s] an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal benefits and privileges of employment.'" Id. (quoting 29 C.F.R. § 1630.2). "The term 'essential functions' has been defined to mean the 'fundamental' duties associated with an employment position, as opposed to the 'marginal functions of the position.'" Rosso v. PI Mgmt. Assocs., L.L.C., No. 02-CV-1702, 2005 WL 3535060, at *10 (S.D.N.Y. Dec. 23, 2005) (quoting 29 C.F.R. § 1630.2(n)(1)).

Defendant contends that the accommodation provided to Plaintiff is "plainly reasonable." See Reply at 3–4. As such, Defendant argues that Plaintiff fails to allege the third element of her *prima facie* case under RA and NYSHRL: that Defendant did not provide a "reasonable" accommodation to allow plaintiff to perform the "essential functions" of her job. See id. In opposition, Plaintiff argues that she stated a *prima facia* case because the Proposed Amended Complaint states that "Defendant refused to engage in the interactive process and failed to provide her any accommodation not afforded to non-disabled employees." Cross-Mot. at 12.

As an initial matter, the parties dispute which accommodations Defendant granted Plaintiff. According to Defendant, the Proposed Amended Complaint alleges that Defendant offered multiple accommodations, including all those listed in the November 18, 2022 Email and the December 14, 2022 Email. See Mot. at 15; PAC ¶ 30 (providing "the accommodation of a workspace away from others, wearing a mask in office and an alternate work schedule."); id. ¶ 39 ("[Plaintiff] would be able to leave meetings, have her phone during meetings, leave for treatment/recuperation, access to private area, and use of First Aide Support Team."); id. ¶ 40

13

("[Plaintiff received] the ability to utilize the two 15-minute breaks and 30-minute lunch when needed to attend to medical needs. If the time needed extended beyond the break time for the day, [Plaintiff] could begin her day earlier or stay later to make up any necessary time."). According to Plaintiff, however, Defendant's December 14, 2022 Email effectively denied all previously proffered accommodations, including those listed in the November 18, 2022 Email. See Resp. at 10–11. Thus, in Plaintiff's view, Defendant only provided Plaintiff with the ability to use her breaks to attend to medical needs and the flexibility to begin her workday earlier or stay later if Plaintiff requires additional breaks. See id. Making all inferences in favor of Plaintiff, the Court will assume that the only accommodations provided to Plaintiff was the accommodation listed in the December 14, 2022 Email.

The Court finds that Plaintiff fails to state a *prima facie* case for failure to accommodate because she has not stated how "with reasonable accommodation, [P]laintiff could perform the essential functions of the job at issue." Natofsky, 921 F.3d at 352. Although Plaintiff has proposed an accommodation (i.e., full-time telework), she has not stated what the "essential functions" of her job are or how her proposed accommodation allows her to perform them. Without stating the job's essential functions, the Court cannot determine if Defendant's accommodations "reasonably" allow Plaintiff to fulfill them.

The only reference to Plaintiff's "essential functions" in the Proposed Amended Complaint are "job related functions," which refer to "in person meetings, trainings, and work-related activities." PAC ¶ 36. The Court will therefore assume, for the sake of argument, that Plaintiff's attendance of in-person meetings, training, and work-related activities are Plaintiff's essential job functions. Plaintiff appears to allege that she can better perform an essential function of her position—i.e., attendance—when she is working remotely, because she could

14

remain virtually "present" at meetings during a medical episode that would otherwise require her to leave an in-person meeting. See PAC ¶ 37 ("[Plaintiff] provided information and insight [to Norman and Janice] into how telecommuting allowed her to stay involved in meetings and training, that she would otherwise have to cancel or leave meetings to handle her glucose levels."). Plaintiff also states that "requiring [her] to work in person would prevent her from accessing information in the ways her non-disabled colleagues did because she would need to leave work activities to attend medical appointments." Id. ¶ 37. As written, however, these allegations are too conclusory for a finding that telework is the only reasonable accommodation to satisfy attendance at in-person meetings.

For one, Plaintiff does not allege what "information" she cannot access or how remote work would allow her to access this information. Moreover, Plaintiff does not explain *how* her proposed accommodation of remote work would allow her to "stay involved" in such meetings. Considering that Plaintiff must attend medical appointments elsewhere, it is not clear how remote work would allow her to stay present in meetings during these medical appointments.

Plaintiff maintains that she can fulfill the essential functions of her job remotely because during the COVID-19 pandemic, she was told that "her job duties could be done remotely." PAC ¶ 15. However, "[t]he fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions [or] that telework is always a feasible accommodation." Thomas v. Bridgeport Bd. of Educ., No. 20-CV-1487, 2022 WL 3646175, at *4 (D. Conn. Aug. 24, 2022) (quoting U.S. Equal Employment Opportunity Commission, Guidance on COVID-19); accord Ahles v. Yellen, No. 20-CV-951, 2023 WL

15

3645486, at *5 (W.D.N.Y. May 25, 2023). Thus, since New York State is no longer under a COVID-19 state of emergency, the Court cannot infer that Plaintiff can still fulfill her job's essential functions remotely.

Moreover, it is evident that in-person work is a top priority for Defendant. See PAC ¶ 40 ("The alternative accommodation stated that it was 'an agency priority for its employees to have an in-office presence.'"). The Court defers to Defendant's judgment with how best to perform the job's essential functions. See Thomas, 2022 WL 3646175, at *4 ("Courts must give 'considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.'") (quoting Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003)).; 29 C.F.R. § 1630, App. ("[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide."). Even assuming telework is a reasonable accommodation, Plaintiff has not demonstrated why it is the *only* reasonable accommodation, especially in light of Defendant's in-office policy. Indeed, Defendant's accommodation may not be the accommodation that Plaintiff most prefers—or even the accommodation best suited for her condition—but Plaintiff has not shown why it is unreasonable under the ADA, RA, and NYSHLS. See Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 95 (2d Cir. 2015) ("[E]mployers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee.").

Plaintiff further argues that "Defendant was not properly engaging in the interactive process, which frustrates Plaintiff's ability to show whether a reasonable accommodation, other than full-time remote work, was available." Cross-Mot. at 11. Plaintiff cites to Parker, 204 F.3d at 38, for the "proposition that an employer's failure to make a reasonable accommodation,

16

particularly when coupled with a refusal to engage in a sufficient interactive process, makes out a prima facie case of disability discrimination." Cross-Mot. at 11 (citing McBride, 583 F.3d at 102). In her Cross-Motion, Plaintiff argues "her requests to discuss accommodations were ignored." Id. The Court finds Parker inapplicable here, however, as Defendant did not refuse to engage in an interactive process. Although the Proposed Amended Complaint repeatedly states in conclusory fashion that Plaintiff did not get to interact with the application process, see PAC ¶¶ 31–34, the pled facts reveal multiple discussions in which Defendant suggested multiple forms of accommodation, see id. ¶¶ 30, 37, 39–40; see also supra Part IV.B.i. Plaintiff neither accepted nor denied Defendant's accommodation offers, see id. ¶¶ 30, 39–40, and Plaintiff ultimately ended the interactive dialogue "because she was not comfortable re-engaging in conversation." Id. ¶ 45. Therefore, the Court does not find that Defendant refused to engage in an interactive process with Plaintiff.

Plaintiff lastly argues that Defendant "failed to provide her any accommodation not afforded to non-disabled employees." Cross-Mot. at 12; see also id. at 11 ("Defendant instead actually offered Plaintiff the same flexibility provided to its non-disabled employees.").[4] This is immaterial. The reasonableness of an accommodation depends on whether it enables the disabled individual "to perform the essential functions of that position." Noll, 787 F.3d at 94 (quoting 29 C.F.R. § 1630.2). Whether Defendant's proposed accommodations were reasonable must be evaluated in the context of Plaintiff's condition, not the accommodations provided to non-disability employees.

---

[4] Moreover, the argument that Plaintiff merely received the *same* treatment as non-disabled employees seems to contradict what is alleged elsewhere in the Complaint: "Defendant subjected [Plaintiff] to *disparate* treatment in the terms and conditions of her employment as compared to similarly situated non-disabled employees." PAC ¶ 14 (emphasis added); see Marino, 18 F. Supp. 3d at 342 (dismissing conclusory RA claims based on a disparate treatment theory).

Since Plaintiff has not stated her job's essential functions, Plaintiff cannot establish a *prima facie* case of disability discrimination under the RA.[5] As such, the Court need not reach a determination on the other issues presented in the parties' briefs. The Court finds that leave to amend the Complaint is futile and therefore denies Plaintiff's Cross-Motion.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss, Dkt. No. 6, is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED without prejudice** against Defendant New York State Office for People with Developmental Disabilities; and it is further

**ORDERED**, that Plaintiff's ADA claims are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiff's Cross-Motion to amend, Dkt. No. 11, is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

---

[5] Although Plaintiff's Response does not make the argument, the Proposed Amended Complaint alleges that Plaintiff was not given certain work equipment when she reported back to the office. See PAC ¶ 46. Assuming these facts are incorporated into her failure to accommodate claim, this is not sufficient to prove Defendant failed to provide a reasonable accommodation. As Defendant points out, Plaintiff does not allege she had this equipment while she was working remotely, but that it was denied her upon returning to the office. See Mot. at 12. Moreover, Plaintiff does not state which essential function the equipment reasonably allows her to perform that she could not perform without it. Id.

DATED:  October 25, 2024
        Albany, New York

LAWRENCE E. KAHN
United States District Judge